**FILED**
**United States Court of Appeals**
**Tenth Circuit**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**February 27, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

STATE OF OKLAHOMA, by and through
its Attorney General; GENTNER F
DRUMMOND; OKLAHOMA
DEPARTMENT OF ENVIRONMENTAL
QUALITY,

     Petitioners,

v.

U.S. ENVIRONMENTAL PROTECTION
AGENCY; MICHAEL S. REGAN,
Administrator, United States
Environmental Protection Agency,

     Respondents.

------------------------------

SIERRA CLUB; HEALTHY
ENVIRONMENT ALLIANCE OF UTAH;
CENTER FOR BIOLOGICAL
DIVERSITY; DOWNWINDERS AT
RISK; UTAH PHYSICIANS FOR A
HEALTHY ENVIRONMENT;
SOUTHERN UTAH WILDERNESS
ALLIANCE; CLEAN AIR TASK FORCE,

     Amici Curiae.

_____

OKLAHOMA GAS & ELECTRIC
COMPANY,

     Petitioner,

No. 23-9514

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY; MICHAEL S.
REGAN, Administrator, United States
Environmental Protection Agency,

     Respondents.

------------------------------

SIERRA CLUB; HEALTHY
ENVIRONMENT ALLIANCE OF UTAH;
CENTER FOR BIOLOGICAL
DIVERSITY; DOWNWINDERS AT
RISK; UTAH PHYSICIANS FOR A
HEALTHY ENVIRONMENT;
SOUTHERN UTAH WILDERNESS
ALLIANCE; CLEAN AIR TASK FORCE,

     Amici Curiae.

_____

TULSA CEMENT LLC, d/b/a Central
Plains Cement Company LLC; REPUBLIC
PAPERBOARD COMPANY LLC,

     Petitioners,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY; MICHAEL S.
REGAN, Administrator, United States
Environmental Protection Agency,

     Respondent.

------------------------------

SIERRA CLUB; HEALTHY

No. 23-9521

No. 23-9533

2

ENVIRONMENT ALLIANCE OF UTAH;
CENTER FOR BIOLOGICAL
DIVERSITY; DOWNWINDERS AT
RISK; UTAH PHYSICIANS FOR A
HEALTHY ENVIRONMENT;
SOUTHERN UTAH WILDERNESS
ALLIANCE; CLEAN AIR TASK FORCE,

    Amici Curiae.

_____

WESTERN FARMERS ELECTRIC
COOPERATIVE,

    Petitioner,

v.                                                                No. 23-9534

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY; MICHAEL S.
REGAN, Administrator, United States
Environmental Protection Agency,

    Respondents.

------------------------------

SIERRA CLUB; HEALTHY
ENVIRONMENT ALLIANCE OF UTAH;
CENTER FOR BIOLOGICAL
DIVERSITY; DOWNWINDERS AT
RISK; UTAH PHYSICIANS FOR A
HEALTHY ENVIRONMENT;
SOUTHERN UTAH WILDERNESS
ALLIANCE; CLEAN AIR TASK FORCE,

    Amici Curiae.

_____

STATE OF UTAH, by and through its
Governor, Spencer J. Cox, and its Attorney

3

General, Sean D. Reyes,

    Petitioner,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY; MICHAEL S.
REGAN, Administrator, United States
Environmental Protection Agency,

    Respondents.

------------------------------

SIERRA CLUB; HEALTHY
ENVIRONMENT ALLIANCE OF UTAH;
CENTER FOR BIOLOGICAL
DIVERSITY; DOWNWINDERS AT
RISK; UTAH PHYSICIANS FOR A
HEALTHY ENVIRONMENT;
SOUTHERN UTAH WILDERNESS
ALLIANCE; CLEAN AIR TASK FORCE,

    Amici Curiae.

_____

PACIFICORP; DESERET GENERATION
& TRANSMISSION CO-OPERATIVE;
UTAH MUNICIPAL POWER AGENCY,

    Petitioners,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY; MICHAEL S.
REGAN, Administrator, United States
Environmental Protection Agency,

    Respondents.

No. 23-9509

No. 23-9512

------------------------------

SIERRA CLUB; HEALTHY ENVIRONMENT ALLIANCE OF UTAH; CENTER FOR BIOLOGICAL DIVERSITY; DOWNWINDERS AT RISK; UTAH PHYSICIANS FOR A HEALTHY ENVIRONMENT; SOUTHERN UTAH WILDERNESS ALLIANCE; CLEAN AIR TASK FORCE,

     Amici Curiae.

_____

UTAH ASSOCIATED MUNICIPAL POWER SYSTEMS,

     Petitioner,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; MICHAEL S. REGAN, Administrator, United States Environmental Protection Agency,

     Respondents.

------------------------------

SIERRA CLUB; HEALTHY ENVIRONMENT ALLIANCE OF UTAH; CENTER FOR BIOLOGICAL DIVERSITY; DOWNWINDERS AT RISK; UTAH PHYSICIANS FOR A HEALTHY ENVIRONMENT; SOUTHERN UTAH WILDERNESS ALLIANCE; CLEAN AIR TASK FORCE,

     Amici Curiae.

No. 23-9520

_____

**Petitions for Review of Orders From the
Environmental Protection Agency
(EPA Nos. EPA-R08-OAR-2022-315 &
EPA-R06-OAR-2021-0801 &
EPA-HQ-OAR-2021-0663)**

_____

Submitted without oral argument:[*]

Gentner F. Drummond, Attorney General, Garry M. Gaskins II, Solicitor General, Zach West, Director of Special Litigation, Jennifer L. Lewis, Assistant Attorney General, Office of the Attorney General, State of Oklahoma, Oklahoma City, Oklahoma, for Petitioners State of Oklahoma, Gentner F. Drummond, and Oklahoma Department of Environmental Quality.

Megan H. Berge, Sarah Douglas, Baker Botts L.L.P., Michael B. Schon, Lehotsky Keller LLP, Washington, D.C.; J. Mark Little, Baker Botts L.L.P., Houston, Texas, for Petitioner Oklahoma Gas and Electric Company.

Emily C. Schilling, Holland & Hart LLP, Salt Lake City, Utah; Kristina R. Van Bockern, Aaron B. Tucker, Holland & Hart LLP, Denver, Colorado; Sean D. Reyes, Attorney General of Utah, Melissa Holyoak, Solicitor General, Salt Lake City, Utah; William L. Wehrum, Wehrum Environmental Law LLC, Washington, D.C., for Petitioner State of Utah.

Misha Tseytlin, Kevin M. LeRoy, Emily A. O'Brien, Troutman Pepper Hamilton Sanders LLP, Chicago, Illinois; Carroll Wade McGuffey III, Melissa Horne, Troutman Pepper Hamilton Sanders LLP, Atlanta, Georgia; Marie Bradshaw Durrant, Christian C. Stephens, PacifiCorp, Salt Lake City, Utah, for Petitioner PacifiCorp.

Steven J. Christiansen, David C. Reymann, Parr Brown Gee & Loveless, Salt Lake City, Utah, for Petitioner Deseret Generation & Transmission Cooperative.

Alan I. Robbins, Debra D. Roby, Thomas B. Steiger III, Washington Energy Law LLP, Washington, D.C., for Petitioner Utah Municipal Power Agency.

_____

[*] After examining the motions, responses, replies, and supplemental authority, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

H. Michael Keller, Artemis D. Vamianakis, Fabian VanCott; Emily L. Wegener, Utah Associated Municipal Power Systems, Salt Lake City, Utah, for Petitioner Utah Associated Municipal Power Systems.

Todd Kim, Assistant Attorney General, Alexandra L. St. Romain, Attorney, U.S. Department of Justice, Environment and Natural Resources Division; Rosemary Hambright Kaban, Daniel P. Schramm, Office of the General Counsel, U.S. Environmental Protection Agency, Washington, D.C., for Respondents.

_____

Before **MORITZ**, **EBEL**, and **ROSSMAN**, Circuit Judges.

_____

**MORITZ**, Circuit Judge.

_____

In a February 2023 final rule, the U.S. Environmental Protection Agency (EPA) disapproved state implementation plans (SIPs) from 21 states across the country because those states all failed to adequately address their contributions to air-quality problems in downwind states. These seven petitions seek review of that final rule: Oklahoma and various industry groups challenge the EPA's decision to disapprove Oklahoma's SIP; Utah and other industry groups challenge the disapproval of Utah's SIP. But the EPA has moved to dismiss or transfer the petitions to the D.C. Circuit under the Clean Air Act's judicial-review provision, 42 U.S.C. § 7607(b)(1), which assigns to the D.C. Circuit any petition seeking review of a "nationally applicable" agency action. And because we agree with the EPA that the challenged rule is nationally applicable, we grant the EPA's motions in part, to transfer the petitions to the D.C. Circuit, and thus do not reach the merits.

**Background**

The Clean Air Act establishes "a cooperative-federalism approach to regulate air quality." *U.S. Magnesium, LLC v. EPA*, 690 F.3d 1157, 1159 (10th Cir. 2012). The Act directs the EPA to establish and periodically revise National Ambient Air Quality Standards (NAAQS), which represent "the maximum airborne concentration[s] of [certain air] pollutant[s] that the public health can tolerate." *West Virginia v. EPA*, 597 U.S. 697, 707 (2022) (quoting *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 465 (2001)). After the EPA revises or sets a new air-quality standard, the agency must designate geographic regions around the country as areas of "attainment" or "nonattainment" (or label them "unclassifiable"). 42 U.S.C. § 7407(d)(1); *see also EPA v. EME Homer City Generation, L.P.*, 572 U.S. 489, 498 (2014). The burden then shifts to the states to each adopt and submit for the EPA's approval a SIP that will implement, maintain, and enforce the NAAQS within its boundaries. *See* 42 U.S.C. § 7410(a)(1); *EME Homer City*, 572 U.S. at 498. But because air pollutants travel with the wind, "heedless of state boundaries," emissions in upwind states can threaten a downwind state's ability to attain and maintain the NAAQS. *EME Homer City*, 572 U.S. at 496. To tackle this complex interstate pollution problem, the Act includes a good-neighbor provision requiring each SIP to prohibit emissions that will "contribute significantly to nonattainment" or "interfere with maintenance" in any other state. § 7410(a)(2)(D)(i).

In 2015, the EPA tightened the NAAQS for ozone. *See* National Ambient Air Quality Standards for Ozone, 80 Fed. Reg. 65292 (Oct. 26, 2015). This revision triggered each state's duty to submit a SIP to implement the 2015 ozone NAAQS. *See*

8

§ 7410(a)(1). In February 2023, the EPA issued a final rule disapproving SIPs submitted

by 21 states because those states all failed to meet their good-neighbor obligations. *See*

*Air Plan Disapprovals; Interstate Transport of Air Pollution for the 2015 8-Hour Ozone*

*National Ambient Air Quality Standards*, 88 Fed. Reg. 9336 (Feb. 13, 2023) [hereinafter

*Air Plan Disapprovals*].[2] In evaluating these SIPs, the EPA applied a four-step framework

it developed to implement the good-neighbor provision. *See id.* at 9338. Under this

framework, the EPA (1) identifies downwind areas expected to have problems attaining

or maintaining the relevant NAAQS; (2) determines which upwind states contribute to

these identified problems in amounts sufficient to link them to the downwind air-quality

problems; (3) identifies the emissions reductions necessary to eliminate each linked

upwind state's significant contribution to downwind nonattainment through a multifactor

analysis; and (4) adopts enforceable control measures to achieve those reductions. *Id.* In

applying the framework, the EPA also considered any alternative approach states

proposed in their SIPs "with an eye to ensuring national consistency." *Id.* at 9338, 9381.

Here, two such states—Oklahoma and Utah, joined by various industry groups—

have petitioned for review of the final rule, challenging the EPA's decision to disapprove

their SIPs. The EPA responded by moving to dismiss or transfer the petitions to the D.C.

Circuit under § 7607(b)(1).[3] We stayed the Oklahoma and Utah SIP disapprovals pending

---

[2] We note that as to two of these 21 states, Minnesota and Wisconsin, the EPA partially approved and partially disapproved the proposed SIPs. *See* Air Plan Disapprovals, 88 Fed. Reg. at 9336, 9354.

[3] Utah and its industry groups suggest in a footnote that the EPA's motion to dismiss their petitions is untimely. In support, they note that under Tenth Circuit Rule 27.3(A)(3)(a), a motion to dismiss "should be filed within 14 days after the notice of

our review and referred the EPA's motions to the panel assigned to hear these cases on their merits.

## Analysis

The EPA argues that we must dismiss or transfer the petitions to the D.C. Circuit under the Clean Air Act's judicial-review provision, which divides reviewable EPA actions into three categories and designates the proper forum for each.[4] *See* § 7607(b)(1). It provides that a petition for review of a "nationally applicable" final action "may be filed only in [the D.C. Circuit]." *Id.* By contrast, a petition for review of a "locally or regionally applicable" final action "may be filed only in the . . . appropriate [regional] circuit."[5] *Id.* But if that "locally or regionally applicable" action "is based on a determination of nationwide scope or effect" and if the EPA, in taking that action, "finds

---

appeal is filed, unless good cause is shown." But we agree with the EPA that it has shown good cause for filing its March 16, 2023 motion slightly more than 14 days after Utah and its industry groups petitioned for review on February 13 and 23, 2023: various petitioners have sought review of the same final rule in regional circuit courts across the country, and the "EPA has acted as expeditiously as practicable in moving to [dismiss or] transfer these cases [to the D.C. Circuit] in a coordinated fashion." EPA Utah Mot. 2 n.1.

[4] We need not decide whether § 7607(b)(1) is a jurisdictional or venue provision. *See ATK Launch Sys., Inc. v. EPA*, 651 F.3d 1194, 1196 n.1 (10th Cir. 2011). For our purposes, it is enough that the provision is mandatory and that the EPA invokes it here. *See Eberhart v. United States*, 546 U.S. 12, 19 (2005) (explaining that nonjurisdictional claim-processing rules "assure relief to a party properly raising them").

[5] We reject petitioners' cursory suggestion that § 7607(b)(1), by its text, assigns all petitions challenging a SIP disapproval to the regional circuits. The statute merely provides that "[a] petition for review of the [EPA]'s action in approving or promulgating any implementation plan . . . or any other final action . . . (including any denial or disapproval . . .) *which is locally or regionally applicable* may be filed only in the . . . appropriate [regional] circuit." § 7607(b)(1) (emphasis added). It does not, as petitioners assert, say that any such approval, promulgation, denial, or disapproval *is* locally or regionally applicable.

10

and publishes that such action is based on such a determination," then the petition "may be filed only in the [D.C. Circuit]." *Id.*

Under the statute's plain text, then, whether a petition for review belongs in the D.C. Circuit turns exclusively on the nature of the challenged agency action. *See ATK Launch Sys.*, 651 F.3d at 1197. We must therefore ask whether the action itself is "nationally applicable" or "locally or regionally applicable." *Id.* (quoting § 7607(b)(1)). And in answering that question, we look only to the face of the action, not its practical effects or the scope of the petitioner's challenge. *Id.*

On its face, the final EPA action being challenged here is nationally applicable. Petitioners seek review of a final rule disapproving SIPs from 21 states across the country—spanning eight EPA regions and ten federal judicial circuits—because those states all failed to comply with the good-neighbor provision. *See* Air Plan Disapprovals, 88 Fed. Reg. at 9380. And in promulgating that rule, the EPA applied a uniform statutory interpretation and common analytical methods, which required the agency to examine the overlapping and interwoven linkages between upwind and downwind states in a consistent manner. *Id.* Because a final action with these features is "nationally applicable" under § 7607(b)(1), judicial review is proper only in the D.C. Circuit. *See ATK Launch Sys.*, 651 F.3d at 1197.

Seeking to avoid this conclusion, petitioners urge us to view the 21 SIP disapprovals in the final rule as separate, locally or regionally applicable agency actions. They maintain that each of their seven petitions challenges just one such action: either the Oklahoma SIP disapproval or Utah SIP disapproval. Those final SIP disapprovals,

11

petitioners say, turned on state-specific facts and grew out of several proposed rules signed by regional administrators. And in petitioners' view, the EPA cannot transform a locally or regionally applicable SIP disapproval into a nationally applicable action by deciding to "packag[e] it together with 20 other SIP disapprovals" in a single final rule. Utah Resp. 13.

But petitioners' arguments collide with § 7607(b)(1)'s plain text, which directs courts to consider only the face of the "final action," establishing an action-focused method for determining the proper forum for judicial review. It is simply not material to the analysis that the EPA issued several *proposed* rules or that it could have chosen to issue standalone final SIP disapprovals. What matters is the nature of the agency's final action. *See ATK Launch Sys.*, 651 F.3d at 1197. And here, that action is a nationally applicable final rule, signed by the EPA administrator, disapproving SIPs from 21 states across the country—not just one—because those states failed to meet their good-neighbor obligations.

Nor is it material that petitioners each purport to challenge only one such SIP disapproval. By its terms, § 7607(b)(1) "assigns to the D.C. Circuit all challenges to 'nationally applicable [final actions],' not, for instance, all national challenges or all challenges that will have a national effect." *Id.* (quoting § 7607(b)(1)). Thus, we have made clear that "the manner in which a petitioner frames [their] challenge" does not "alter the court in which the [petition] belongs"; "[t]he nature of the [agency action], not the challenge, controls." *Id.* And we are not alone in making this unremarkable observation. *See, e.g.*, *Hunt Refin. Co. v. EPA*, 90 F.4th 1107, 1110 (11th Cir. 2024)

12

("When deciding whether a final action is 'nationally applicable,' we begin by 'analyzing the nature of the EPA's action, not the specifics of the petitioner's grievance." (quoting *RMS of Ga., LLC v. EPA*, 64 F.4th 1368, 1372 (11th Cir. 2023))); *S. Ill. Power Coop. v. EPA*, 863 F.3d 666, 670 (7th Cir. 2017) ("Under the straightforward (if wordy) statutory text [of § 7607(b)(1)], venue depends entirely on—and is fixed by—the nature of the agency's action; the scope of the petitioner's challenge has no role to play in determining venue."); *Sierra Club v. EPA*, 926 F.3d 844, 849 (D.C. Cir. 2019) ("The court need look only to the face of the agency action, not its practical effects, to determine whether an action is nationally applicable.").

We applied this action-focused approach in *ATK Launch Systems*. There, the petitioners sought review of a final EPA rule listing attainment and nonattainment designations for the NAAQS for fine particulate matter. 651 F.3d at 1195. Although the petitions challenged the nonattainment designations of only two counties in Utah, the rule "enumerate[d] designations for areas across the country." *Id.* at 1195–96. The EPA moved to dismiss or transfer the petitions under § 7607(b)(1), arguing that they belonged in the D.C. Circuit because the rule was nationally applicable. *Id.* at 1196–97. We agreed, explaining the statute "makes clear that this court must analyze whether the [final action] itself is nationally applicable, not whether the effects complained of or the petitioner's challenge to that [action] is nationally applicable." *Id.* at 1197. Because the rule there applied "a uniform process and standard across the country" and "reache[d] geographic areas from coast to coast," we held that it was nationally applicable and therefore transferred the petitions to the D.C. Circuit. *Id.* at 1197–98, 1200; *see also Hunt*, 90 F.4th

13

at 1110-11 (holding that two EPA final actions were "nationally applicable" because they denied 105 small-refinery exemptions to refineries across the nation and because EPA applied "new statutory interpretation and analytical framework that is applicable to all small refineries no matter their location or market"); *S. Ill. Power Coop.*, 863 F.3d at 671 (holding that similar air-quality designation rule was "nationally applicable" because it was "a final rule of broad geographic scope" and "promulgated pursuant to a common, nationwide analytical method," even though petitioners challenged only EPA's designation of one Illinois county as nonattainment area). Here, too, the final rule is nationally applicable: it applies a consistent statutory interpretation and uniform analytical methods to disapprove SIPs from 21 states around the country.[6] *See* Air Plan

---

[6] Petitioners attempt to distinguish *ATK Launch Systems* and *Southern Illinois Power Cooperative* by focusing on the nature of the statutory authority under which the EPA took the challenged actions. They highlight that the Clean Air Act assigns to the EPA the responsibility to make air-quality designations, and the states merely offer recommendations on how to designate areas within their boundaries. *See* § 7407(d)(1)(A)–(B). By contrast, petitioners note, the statute delegates to the states the responsibility to craft SIPs, and the EPA must approve such a plan if the agency determines that it is complete and meets all applicable requirements. *See* § 7410(a), (k). So according to petitioners, the EPA's authority "differ[s] significantly" when the agency makes air-quality designations than when it approves or disapproves SIPs, with the EPA taking a more back-seat role when reviewing SIPs. Utah Resp. 19. But we discern no material distinction here. Whether an EPA action is nationally applicable does not turn on the "type" of statutory authority delegated to the agency, *id.* at 22; again, it depends entirely on the nature of the agency's action, *ATK Launch Sys.*, 651 F.3d at 1197. Thus, as the EPA points out, it is appropriate to challenge in a regional circuit court even a final action that sets air-quality designations if that action applies only locally or regionally. *See, e.g.*, *Texas v. EPA*, 983 F.3d 826, 832 (5th Cir. 2020) (holding that final rule establishing attainment and nonattainment designations for counties in Texas was "'locally or regionally applicable' because it [wa]s directed only at . . . contiguous Texas counties" (quoting § 7607(b)(1))). But when a final action concerns states around the country and applies a common analytical method—as in *ATK Launch Systems*, *Southern Illinois Power Cooperative*, and this case—then the action is nationally applicable.

14

Disapprovals, 88 Fed. Reg. at 9380. So any challenge to that rule belongs in the D.C. Circuit. *See* § 7607(b)(1).

We recognize that the Fourth, Fifth, and Sixth Circuits recently reached the contrary conclusion: each denied the EPA's motions to transfer petitions challenging the same final rule at issue here.[7] *See Texas v. EPA*, No. 23-60069, 2023 WL 7204840, at *1 (5th Cir. May 1, 2023) (unpublished); *Kentucky v. EPA*, No. 23-3216, slip op. at 6 (6th Cir. July 25, 2023); *West Virginia v. EPA*, 90 F.4th 323, 331 (4th Cir. 2024). But in our view, all three courts strayed from § 7607(b)(1)'s text and instead applied a petition-focused approach that we and other circuits have rejected. Indeed, the Fifth Circuit conceded that its own precedent recognizes "§ 7607(b)(1)'s use of 'action' means 'the rule or other final action taken by the agency that the petitioner seeks to prevent or overturn.'" *Texas*, 2023 WL 7204840, at *3–4 (quoting *Texas v. EPA*, 829 F.3d 405, 419 (5th Cir. 2016)). Nevertheless, rather than focusing its analysis on the face of the rule as is required, the Fifth Circuit focused on the nature of the petitions before it—which each challenged a single SIP disapproval contained in the final rule—to conclude that "the relevant unit of administrative action" was each individual SIP disapproval and that such disapprovals were "locally or regionally applicable." *Id.* at *4. The Fourth and Sixth Circuits followed suit. *See Kentucky*, slip op. at 4 (following *Texas* and wrongly characterizing "EPA's [disapproval] of *Kentucky's* SIP," not the final rule itself, as the

---

[7] The Eighth Circuit also denied the EPA's transfer motions, but it simply issued summary orders containing no analysis. *See, e.g.*, *Arkansas v. EPA*, No. 23-1320 (8th Cir. Apr. 25, 2023).

relevant "final action"); *West Virginia*, 90 F.4th at 330–31 (joining *Texas* and *West Virginia* and improperly framing "the relevant agency action" as "EPA's disapproval of West Virginia's SIP").

All three decisions generated strong dissents highlighting critical flaws in the majority opinions. In *West Virginia*, for example, the dissent sharply criticized the majority opinion for "jettison[ing the well-established] analysis altogether and instead look[ing] to the nature of West Virginia's challenge to hold that the [f]inal [r]ule is locally applicable." 90 F.4th at 334 (Thacker, J., dissenting). The dissent further pointed out that the decisions from the Fifth and Sixth Circuits likewise "depart[ed] from all relevant precedent," including our decision in *ATK Launch Systems*, "without adequate justification or explanation." *Id.* at 333–35; *see also Kentucky*, slip op. at 11–12 (Cole, J., dissenting) (relying on *ATK Launch Systems* and other cases to explain that majority's "limiting [of] the 'action' to Kentucky's state-specific challenge is inappropriate" when "the 'scope of the [final rule]' is much broader" (quoting *Nat. Res. Def. Council v. Thomas*, 838 F.2d 1224, 1249 (D.C. Cir. 1988))); *Texas*, 2023 WL 7204840, at *11–12 (Douglas, J., dissenting) (same). Moreover, this misdirected approach may well result in ten regional circuit courts ruling on issues arising from the same nationwide EPA rule, thereby defeating the statute's purpose to centralize judicial review of nationally applicable actions in the D.C. Circuit. *See Texas*, 2023 WL 7204840, at *13 (Douglas, J., dissenting); *Kentucky*, slip op. at 21 (Cole, J., dissenting).

In short, because the Fourth, Fifth, and Sixth Circuit decisions denying the EPA's transfer motions all depart from § 7607(b)(1)'s plain text and our binding precedent, we

16

decline to follow them. *See Hunt*, 90 F.4th at 1111-13 (distinguishing *Texas* and

*Kentucky* and further disagreeing with *Calumet Shreveport Refining, LLC v. EPA*, 86

F.4th 1121 (5th Cir. 2023), in which the Fifth Circuit held that two EPA final actions

denying 105 small-refinery exemptions were locally or regionally applicable). And

applying § 7607(b)(1) as written, we readily conclude that these petitions belong in the

D.C. Circuit because they seek review of a nationally applicable final rule.[8]

## Conclusion

Because petitioners seek review of a nationally applicable final rule, we grant the

EPA's motions to dismiss or transfer in part and transfer the petitions to the D.C. Circuit.

---

[8] Given this conclusion, we need not address the EPA's alternative argument that the petitions belong in the D.C. Circuit even if the final action is "locally or regionally applicable" because it "is based on a determination of nationwide scope or effect" made and published by the EPA. § 7607(b)(1).